Helson, J.,
delivered the opinion of the court.
The original hill in this case was filed the 24th Hovember, 1858, against John C. Cooper and others, but in consequence of the deaths of the principal parties, and other supposed causes not' • appearing upon the record, no final decree was pronounced until 22nd April, 1869. It was alleged, in the original bill, that Jesse C.’ Cooper was indebted to *676 complainant in the sum of seven thousand five hundred and twenty dollars, or thereabouts; that he was the owner of a store house and lot in Paris, Henry county, described in the bill; that he sold the same to John C. Cooper for four thousand dollars, for which amount the said John C. executed his note, hearing date 10th March, 1858, and payable one day after date; that the. said Jesse C. Cooper assigned said note to complainant, W. A. Tharpe, by a written assignment thereon, bearing date 20th March, 1858, waiving demand and notice, he having promised that the said John would discharge the indebtedness of Jesse Cooper to complainants; that said note is a lien upon the store house and lot, and that complainants have the right to enforce the same by a sale of said property. The bill charges further that on the 24th March, 1858, the said John C. Cooper executed a deed of trust to one David R. S. Nowlen, as trustee, in which he conveyed said house and lot and other property for the benefit of numerous creditors therein .named, but that neither the trustee nor the creditors had accepted the trust, and that they had notice, at the time of the execution of the trust deed, that the purchase money was not paid, and that the note, therefore, had been transferred to complainants. The bill prays that the said Jesse C. and John C. Cooper, and the said trustee and beneficiaries, may be made defendants, and that, upon final hearing, the store house and lot may be sold 'for the satisfaction of complainant’s debt, and *677 the bill also prays for general relief. Process appears to have been duly served on Jolm H. Pun-lap, 4tli December, 1858, and after regular publication, and it appearing that all the defendants had failed to plead, answer, or demur, a judgment, joro confesso, was entered against them July 7th, 1859. The cause seems to have been continued on account of the absence of complainant’s solicitors, until 5th May, 1868, when it appearing that the original bill was lost during the war, a copy thereof was substituted, by order of the court, on the affidavit of the clerk, and the deaths of Jesse C. and John C. Cooper were suggested and admitted, and upon the affidavit of John II. Dunlap, the judgment pro confesso was set aside as to him, and he was permitted to file his answer. Complainant. by his .counsel, excepted to the order granting this leave. The death of John "W. Yowlen was afterwards suggested and proved, and the suit regularly revived and proceeded with against the heirs at law and personal representatives of all the deceased parties, and was heard on the 22nd April, 1869, when it was declared that complainant acquired no lien upon the house and lot, and his bill was dismissed as to all the defendants except the administrator of Jesse 0. Cooper, against whom a decree was pronounced for six thousand six hundred and forty dollars. Drom this decree complainant appealed, and having . since died, the suit has been regularly revived in this court in the name of his administrator. It was stated by John *678 H. Dunlap, in the affidavit he filed on his application to have the decree pro confesso set aside, that he supposed his reason for not answering it was that he thought there was no equity in the hill, and that the cause was heard before Chancellor J. P. "Williams, not a great while after the judgment pro confesso, and decided against complainant, but that the decree was not entered because complainant’s counsel - asked further time. In his answer to the bill, Dunlap stated that the trustee named in the deed of trust had never been qualified, but insists that the deed of trust was made with his, Dunlap’s, knowledge, and that he assented to its execution after being informed that the debts due to him from the defendants, Jesse C. and John C., would be provided for. He states further that at the last term of said Chancery Court it was determined, in the ease of Jonathan J. Dawson against this defendant and the complainants in this cause and others, that this defendant did accept the benefit of said conveyance, and a decree was pronounced directing a sale of said store house and lot for the satisfaction of the debt due to defendant and others. All the other material allegations in the bill are denied. Aside from the statement in the answer, there is nothing in the record to show the existence of the said suit of Dawson v. Dunlap and others, except the statement in said decree of 22nd April, 1869, .that “this cause came on for hearing at this term upon the bill and exhibits, answer, the record in the case of J. L. Dawson against John Ii. Dunlap *679 et als, orders pro confesso, and proof, and was argued by counsel, and upon consolidation thereof it was ordered, adjudged and decreed, etc. It is not stated with what case this cause was consolidated, nor is there any other entry showing the consolidation of this cause with any other. The decree in the ease is entitled “W. A. Tharpe v. John II. Dunlap et als.,” but it is not even stated in the decree that the record in the case of J. S. Dawson v. John H. Dunlap et als. is a record of the Chancery Court at Paris, in which -this cause was finally heard. The thirty-o'ne pages composing this the original transcript of record, were duly certified 1st March, 1870, by the Clerk and Master, as containing a “full, true, perfect, and complete transcript of the record in this cause.” But a certiorari was awarded to bring up a more perfect transcript, and on the 8th April, 1871, an additional transcript was made out, which seems to have been tacked on to this, and the certificate appended to said transcript states that the foregoing forty-two pages contain a full and true transcript of the case, in said court, of Jonathan S. Dawson v. John C. Cooper et als, as appears of record, etc.; and the paging of that transcript appears to have been crossed with a pen, and the paging of the original transcript continued therein, so as to present seventy-four pages in the entire transcript now before us. On an examination of the second transcript we see that a bill was filed in that case on the 3d February, 1860, by the said Dawson, as a *680 creditor of John C. Cooper against the said John, and all proper parties to attach the said store house and lot, and to have the said deed of trust declared null and void, on the ground that it was made without the knowledge or consent of the beneficiaries. An attachment was issued in said cause 4th February, 1860, and levied on said store house and lot on the 6th February, 1860, and such proceedings were had in said cause that a decree was pronounced therein on the 7th December, 1867, declaring -that said deed of trust was legal and valid; that part of the beneficiaries named in such deed had acquired a lien thereby on said property superior to the attachment lien; that the other, and, perhaps, the larger number of creditors, including the complainant in this case, against whom the judgment pro confesso appears to have been taken, had failed to accej)t the provisions of said deed of trust, and had repudiated the same, and it was therefore ordered that the store house and lot should be sold, etc., without redemption, for the satisfaction of the debts due the trust creditors; that the surplus should be applied to the satisfaction of complainant’s debt, and that an account should be taken, etc. This decree was revived from term to term until 18th March, 1871, and no further proceedings appear to have been since taken in said cause.
In view of these singular and somewhat extraordinary proceedings, it has been earnestly maintained by complainant’s counsel, that it was error *681 to set aside the judgment pro 'confesso in the first suit against John Ii. Dunlap, after so great a lapse of time, and upon so slight an affidavit, and that the record in the same suit can not he looked to as, in any sense, forming part of the record in this cause. On the first proposition, it is manifest that the first cause assigned in John Ii. Dunlap’s affidavit, that he did not answer the bill because he believed there was no equity in it, is trivial, unimportant and not entitled to any consideration. The statement, however, that he was informed, “not a great while after the judgment pro confesso,” that the Chancellor had decided the case against complainant, but had not caused his decree to be entered of record, at the instance of complainant’s counsel, who desired further time, is of grave import, and can not be disregarded, when it is considered that the late civil war intervened about that time; and there is no evidence in the record that the court was held for several years after its commencement. It appears that process was served on John H. Dunlap, on the 6th December, 1858, and the judgment was properly set aside, under section 4875 of the Code, which provides that a defendant who has been served with process, may, at any time before final decree, on good cause shown, obtain from the -Chancellor, or Clerk and Master, an order setting aside the decree pro confesso, upon filing a fall and sufficient answer, and the payment of costs. But the Chancellor erred in not taxing Dunlap with the costs, as directed by the statute.
*682 Although the statements in tlie decree, and the other circumstances above detailed, are not entirely satisfactory, the record in the said suit of Dawson v. Cooper and others, must be regarded as part of the record in this cause. The decree of the Chancellor shows that the cause was heard upon the bill and exhibits, the answer, the record in the case of John H. Dunlap and others, etc., and “upon consolidation thereof.” On examining the last named record, we perceive that the same deed of trust is exhibited therein as in the original suit, and it is to be presumed that the record referred to was a record of the same court, and that the consolidation referred to, however vaguely stated, could have reference alone to the two suits involving .litigation as to the same subject matter.
What, then, are the rights of the parties resulting from these anomalous proceedings? There can be no question as to the general principles governing the vendor’s lien in this State. It is now the well established doctrine, that when the legal title has been conveyed by the vendor by a deed of conveyance, his lien does not pass to the assignee of the vendee’s obligation for purchase money; but when he retains the legal title, and executes a title-bond, or covenant to convey merely, he holds the legal title as security for the payment of the purchase money, in analogy to a mortgagee; and his assignment of the vendor’s note carries with it the security: Green v. Demoss, 10 Hum., 373, 375; Lincoln v. Purcell, 2 Head, 151; Thompson v. Pyland, 3 *683 Head, 538, 539. The security so held may be transferred by assignment, when the legal title remains in the vendor, or when the land has been conveyed and the lien retained on the face of the deed. In the case before us, the -bill expressly charges that “the note is a lien upon said store house and town lot, and that complainant has a right to have his said note satisfied by a sale thereof.” This is denied in the tardy answer of John H. Dunlap, but -is admitted by the decree pro confesso as to all the other defendants. There is no evidence on the subject, and there are but two depositions in the entire transcript. J. T. Dawson, a witness for complainant in the original suit, proves the note and the assignment upon it, and that Howlen, the trustee, refused to accept the trust. He states that he does not know what became of all the notes and accounts transferred in the deed of trust; that Jesse 0. Oooper collected some of them, and some, together with the books, remained at the old store house until the commencement of the war; that John Cooper collected one or two, and Jesse'collected the most of them that were collected; that the books, etc., were not- exclusively under the management and control of any one — but that Jesse C. and John C. Cooper each, as well as other persons, had access to them; and that witness settled accounts to the amount of $200.00 with Jesse C. Cooper, and of $40.00 with John C. Cooper. He states, also, that no trustee ever was appointed in place of Uowlen. James Gr. Brown, a witness for *684 the defendant, proves that he wrote the deed of trust, as requested by John C. Cooper, who furnished a list of the claims he wished to secure; that they had to go to General Dunlap to get his claim; that Dunlap was anxious to have it included, and after the deed was completed, inquired if it had been done. ■ Witness states that a debt to W. A. Tharpe was mentioned, and, as he thinks, included in the deed. He also says that Nowlen refused to accept the trust; • that the books and accounts remained in John C. Cooper’s possession until he went to Texas, and that no steps, within the knowledge of witness, were ever taken, either by the trustee or any of the beneficiaries under the deed of trust. This witness proves likewise, that the assignment on the note, mentioned in complainant’s bill, is in the • handwriting of John C. Cooper. No depositions appear to have been taken in the case of Dawson v. Cooper and others, although the decree states that the cause was hoard on the bill, answers, orders pro confesso and proof.
Although the record states that the two cases were consolidated, there is no other evidence of the fact than the loose and imperfect statement above quoted. The decree setting up the trust deed, was pronounced, in Dawson’s case, the 7th December, 1867, and the decree, in this case, on the 22d April, 1869. It does not purport to be a decree in two causes, and they can not be considered and heard together as one cause, in consequence of the supposed consolidation. The record in Dawson’s case, *685 can only be considered as Raving been read in evidence on the hearing of,this; and however error neons that decree may be, the case is not here in an attitude to enable this court to reverse it.
Regarding it as evidence merely, its effect can only be determined by looking to the condition of the two causes, when it was pronounced. The bill of Tharpe was filed something more than fourteen months before that of Dawson. His judgment pro covfesso, was entered more than eight years before the decree in Dawson’s case, although Dawson was not a party to the suit. . Yet the record shows that a person of the same name appeared before the Clerk and Master, and made an affidavit, as agent of complainant Tharpe, for the purpose of having a guardian ad litem appointed for the minor heirs of Howlen, and the deposition for complainant herein before referred to, was given by a witness styled J. 8. Dawson — who, in the absence of any proof' to the contrary, may be considered the same person as the complainant in the second bill. On this state of facts, we hold in accordance with the familiar maxim — “ qid prior, est tempore potior est jure” — that the suit of Tharpe having been first commenced, and he having obtained a decree pro confesso, establishing the allegations in his bill, his suit operated as notice to Dawson and all others, and that any decree to which he is entitled, although' posterior in point of time, is superior in point of right to the intermediate decree obtained by Dawson. If Dawson is the same person who *686 made the affidavit, and whose deposition was taken, as we presume he is, he not only had the constructive notice resulting from a Us pendens, hut had such notice in fact as to preclude him and the other parties to his suit, with the exception of Dunlap, from relying upon his decree as a defense to the complainant’s bill. . It does not appear that any person was appointed trustee in Nowlen’s place, although it is stated in one of the answers in Dawson’s case, that a proceeding was instituted for that ' purpose. Nor does it appear in Dawson’s ease, that his suit was ever revived, as it was revived in Tkarpe’s case, against Nowlen’s heirs. Any purchaser of the trust property under the decree pronounced in that case, would be affected with constructive notice of the prior suit of Tharpe, in regard to the same property; the established rule being that a Us pendens, duly prosecuted and not collusive, is notice to a purchaser, so as to affect and bind his interest by the decree; and the Us pendens begins from the service of the subpoena after the bill is filed: 2 Lead. Cases in Eq., third Am. ed., 171; Murray v. Ballon, 1 J. C. R., 566; Murray v. Finster, 2 Ib., 155; Heatley v. Finster, Ib., 158; Murray v. Lylburn, 2 J. C. R., 444.
The decree in Dawson’s case declares that a valid lien was ci'eated by the deed of trust in favor of Pitman and Tennctt, Joseph C. Grubb & Co., John M. and Janies Stokes, J. B. Lippincott & Co., and John II. Dunlap, but not in favor of the numerous other beneficiaries in the deed; it ap *687 pearing as the decree recites, “that the other beneficiaries have failed to accept the provisions of said deed of trust, or have repudiated the same.” Aside from the decrees pro confesso, there is no evidence in the record to sustain this assumption. It is adjudged in the decree, that the property shall he sold for the satisfaction of the debts due the persons'above named, and that the surplus proceeds of said sale shall be applied to the satisfaction of Dawson’s claim. Yet, as already shown, each of the firms held to be beneficiaries in said decree, as well as Dunlap, were made defendants to Tharpe’s bill, and by the previous pro confesso decree in his case, it was virtually • adjudged that neither the trustee nor any of the beneficiaries had accepted the trust; that they had notice of complainant’s lien, and that he was entitled to have satisfaction thereof out -of the proceeds of the sale of the trust property. The decree, therefore, in Dawson’s case, was utterly null and void as to all the beneficiaries in said trust deed, except Dunlap. But as the decree pro confesso in Tharpe’s case was set aside, as to Dunlap, as the proof shows that Dunlap was consulted as to the execution of the trust before it was completed, and his assent to the deed may be correctly inferred from this circumstance, as he relied upon the trust deed in his defense to Dawson’s suit, and relies upon it in this case, and as there is no proof that he had notice of the assignment of the vendor’s lien to the complainant, we are constrained to hold that *688 Dunlap, notwithstanding his dilatory defense, is entitled to have satisfaction of the claims secured in his favor before complainant can enforce his lien. See Mills v. Haynes, 3 Head, 335, 336; Goss v. Singleton, 2 Head, 77; Breedlove v. Stump, 3 Yer., 266, 267; Robertson v. Sublett, 6 Hum., 316. But as to all the other defendants they are precluded by the pro eonfesso decree, as well as by their failure to make proof in either case that they accepted the trust, from asserting any benefit whatever under the trust deed. While in the absence of opposing proofs or circumstances, it will ordinarily be presumed the beneficiaries have accepted a- deed of trust made for their benefit, this presumption cannot prevail against the decree pro eonfesso, and the direct allegation in the bill that the creditors have not accepted said trust.
In the answer of J. B. Lippincott and others, John M. and James Stokes, Pitman and Tennett, and Grubb and McLaughlin to Dawson’s bill, it is stated that their attorneys at Paris had notice of the intention of John C. Cooper to execute the deed of trust, but there is no proof of this fact, nor does it clearly appear who were the attorneys referred to. But as the creditors named in the trust deed are numerous, let a decree be entered, in order to avoid error or misapprehension, declaring the amount due to John H. Dunlap on the two notes mentioned in the deed of trust, each for one thousand four hundred and seventy-two dollars and thirty cents, bearing date 18th December, 1855, *689 clue at sis and twelve months from elate, and the note for three hundred dollars, dated 1st June, 1857, and indorsed by 1ST. D. and D. Morse, to said Dunlap, and let it he declared that none of the other creditors named in said deed of trust are entitled to any benefit under it, and that the decree in Dawson’s case is inoperative and void for the reason that the trust property was in litigation, and, therefore, in custodia legis, before the commencement of his suit. Let the clerk of this court ascertain and report instanter the amount due complainant, and also the amount due John H. Dunlap, and a decree be rendered therefor. The decree will direct the clerk of this court, after the usual advertisements to be specified therein, to sell the trust property, on the premises, on a credit of eight months, taking bond and approved security, and retaining a lien for the purchase money. One half of the costs of this cause, in this court and the court below, will be paid by the said John II. Dunlap, and the other out of the proceeds of sale. After the payment of one half the costs, the residue of the proceeds of sale will be applied, first, to the satisfaction of the said amount due John H. Dunlap; and, secondly, towards the satisfaction of the amount due the estate of said Tharpe. The property may, if the complainant so desires, be sold without the right of' redemption, and the decree of the Chancellor will be reversed.