EAST LAKE LUMBER BOX COMPANY v. J. W. SIMPSON.

and

HARRIS, ADAMS & HARRIS v. J. W. SIMPSON.

Middle Section.    April 2, 1927.

Petition for Certiorari denied by Supreme Court, June 11, 1927.

1. **Mechanics' liens. The contractor and owner of the property are necessary parties in a furnisher's lien suit.**
   A furnisher's lien may be enforced by attachment but the contractor and owner must both be made parties to the suit, for the furnisher is not entitled to a personal judgment against the owner since there is no privity of contract between them, but he must enforce his lien by suing both, the contractor, so as to fix the amount of the debt, and the owner, by attaching the property for the enforcement of his lien.

2. **Trial. Consolidation of cases does not change the rules of pleading, nor the rights of the parties.**
   The consolidation of cases does not strengthen either case for the rights of the parties still depend upon the pleading, proof and proceedings in the respective cases, the same as if no consolidation had been had.

3. **Judgment. Consent decrees are valid although beyond the pleading.**
   Consent decrees are valid although not confined to the matter presented in the pleading, but if it appears that the court rendered the decree on the evidence and from the record, then it is not a consent decree.

4. **Judgment. Evidence held not to show a consent decree.**
   In the instant case where the record did not show that the party consented to the decree, held that the decree could not be considered a consent decree.

5. **Mechanics' liens. After time for fixing lien has elapsed the lien can not be revived by furnishing additional insignificant material.**

A lien can not be revived or effected by the doing of an insignificant act not originally contemplated, where it is so insignificant as to form no part of the original conception, such as the making good of trifling defects.

6. **Mechanics' liens. Notice. Notice given before completion of building is premature.**

The notice to fix a furnisher's lien given before the completion of a building is premature and does not perfect the lien.

7. **Damages. Measure of damages for improperly constructed building defined.**

In an action to recover damages caused by a contractor's defective construction of a building under contract held that the proper measure of damages was the difference between the value of the building constructed in accordance with the plans and specifications and the one actually erected.

8. **Damages. Measure of damages for improperly constructed building differs from that for failure to finish contract.**

The measure of damages for improperly constructing a building in violation of a contract is different from the measure of damages arising from the failure to finish a building under contract. In the latter case it is the difference between the agreed price and the cost of performance.

Appeal from Chancery Court of Marion County; Hon. T. L. Stewart, Chancellor.

Affirmed.

Alan S. Kelley, of Jasper, and L. F. Wilkerson, of Chattanooga, for appellants, Lumber Co., et al.

L. R. Darr, and A. R. Hall, all of Jasper, for appellee, Simpson.

CROWNOVER, J. The first suit was to recover $1388.01, less $187.38 freight, for lumber and materials furnished to the contractors Harris, Adams & Harris with which to build a store house in Jasper for defendant Simpson, and to enforce a furnishers' lien against said property.

The second suit was by the contractors Harris, Adams & Harris to recover the balance due on the contract price, and for extras, making a balance of $2598.30, alleged to be due, and to enforce a mechanic's lien against the property.

Defendant Simpson denied all liability. He denied that the lumber company had any lien, because it had not given notice within the time required by the statute, and he denied that the contractors had finished the building, or had constructed it according to the plans and specifications, and he filed his answer as a cross-bill seeking damages for abandonment of contract and for defective construction. Later the cross-bill was amended so as to sue for $2000 damages.

The Chancellor held that the Lumber Company had not served notice as required by the statute and dismissed its bill as against Simpson, but rendered a decree in favor of the contractors for $1200.63 —stating in the decree— ''But it appearing that said complainant is entitled to a confessed judgment against defendant, Harris, Adams & Harris, for the sum of $1200.63, with interest from March 20, 1922, to date, amounting to the sum of $108, and complainants will recover the said sum from said Harris, Adams & Harris,'' etc.

But in the last above-styled case the Chancellor held that the contractors had breached the contract and that Simpson had been damaged, but as the amount of the damages was not sufficiently shown, he ordered a reference to the master to take proof and report Simpson's damage. He directed that the measure of damages should be the difference between the values of the building as actually erected, and a building erected according to the contract, plans and specifications; and ordered that Simpson be charged with the contract price ($8536.60), and with reasonable pay for such extra work as the proof showed that the contractors were entitled, and should be credited with the payments made to the contractors, and such other reasonable amounts for other changes as the proof showed were left out, beneficial to the contractors, and in the amount of damages first directed to be ascertained.

The master reported that the contract price, $8536.60 plus extras of $90, totaled $8626.60, credited by payments made by Simpson $7292.03, plus cost of closet left off $50, totaled $7342.03, and that Simpson had been damaged $2000 by reason of the defective construction of the building; hence his total credits were $9342.03, less contract price and extras $8626.60, leaving a balance of $715.42 in Simpson's favor.

The contractors excepted to the report, and the Chancellor modified it so as to charge Simpson with additional extras $209.50, and rendered a decree for $505.93, and costs of the cause in favor of Simpson and against the contractors. Both the Lumber Company and the contractors appealed and have assigned errors.

The facts, necessary to be stated, are, that Harris, Adams & Harris, a co-partnership of Chattanooga, entered into a contract with J. W. Simpson, on August 11, 1921, to furnish the materials and to construct a tile store building in Jasper for J. W. Simpson for the sum of $8536.60, and they purchased $1200.63 worth of materials from the East Lake Lumber & Box Company, of Chattanooga, which company furnished said materials and made the last delivery on October 19, 1921. The contractors proceeded to construct said building, to almost completion, but on December 30, 1921, a contro-

versy arose about the manner of the construction and the completion of said building, and as to the payment of the bills. Simpson insisted that the contractors had not complied with the contract, plans and specifications in certain particulars, and they met at A. R. Hall's law office in Jasper to adjust matters. After they discussed the differences, and the contractors requested Simpson to draft an agreement and mail it to them at Chattanooga, as they had to catch a train. The keys were turned over to Simpson with the understanding that the building would be completed according to the contract. The agreement was later drafted and mailed to the contractors, who refused to sign it, as they claimed certain stipulations about the execution of a bond had not been agreed upon. Simpson moved into the building, and one of the contractors came back sometime about January 15, 1922 and did "a little touching up" on the building, but Simpson insisted that the building was not constructed according to the plans and specifications and had not been completed in many respects, and he refused to pay the balance of the contract price.

The Lumber Company, on February 3, 1922, gave Simpson notice that it had furnished from August 1 to December 1, 1921, $1388.01 worth of materials, itemized, to the contractors for said building, and that the notice was given for the purpose of asserting a furnishers' lien on the property.

On March 20, 1922, the Lumber Company filed its bill against Simpson, alleging these facts, and sought to enforce its furnishers' lien by attachment; but did not make the contractors parties to the suit.

Later Harris, Adams & Harris, the contractors, filed a bill against Simpson and F. A. Kelly, Trustee, alleging the contract, that they had erected the building according to the plans and specifications, and that Simpson had requested certain changes in the plans and specifications, as follows: (1) In that he had the windows relocated, which broke the bond of the tile and cost them $600 extra in time, labor and material. (2) That he had changed the marble baseboard in front from eighteen inches to twenty-four inches, which cost in time, labor and material $200 extra. (3) That he had the plans of the doors, stairway and vestibule changed which cost them in time, labor and material $175; and that he had made other changes in the floors, from concrete to oak, all of which added to the contract price, totaling $9511.60, upon which he had paid only $7013.22, which left a balance of $2598.38, for which they sued, and sought to enforce a mechanic's lien by attachment.

The contract and specifications provided that all materials employed in the construction were to be the best of the kind, and all labor was to be performed in the best and most workmanlike man-

ner by skilled workmen, and that the contractors were to lay out the work and be responsible for the correctness of the same, and they were to keep a competent foreman at the works so as to duly and adequately protect the work at all times during its progress.

Simpson insisted that the changes were made with the consent of the contractors, who told him at the time that there would be no extra expense, except $65 for changing the floor; and that the building had never been completed, and that the work was defective, in that, the joints of the tile were not properly put together with mortar, and as a result the walls leaked, that the walls had been put up on old foundations, which settled, and caused the walls to crack in many places on every side; that the contract called for two window weights for each window, and that they had put in only one; that it called for double strength glass for the windows and that they had put in only single strength glass; that they had put in light joists of green timber, which caused the roof to sag and to leak; that they used green joists for the second floor, which caused it to sag from one and one-half to two inches, as a result of which the plaster had cracked, and the doors could not be closed, leaving cracks on each side of the doors; that they did not put joists far enough into the walls and did not put three rows of bridging between the joists, as a result of which the weight of the roof was thrown upon the second floor and caused the floor to sag; that the front windows were not finished with copper corners as contracted; that the front steps were not finished as contracted; that one coat of paint was left off on the inside in the first story; that one cement hearth and one flue were left off; that the hatch-way leading to the roof was not finished, and that the walls were not built as high as contracted, in that they were from one foot to one foot and ten inches short:

The first assignment of error is that the Chancellor erred in denying a lien in favor of the East Lake Lumber & Box Company, because notice was given within the thirty days after the delivery of the last material furnished, and within thirty days after the completion of the building by the contractors.

After an examination of the record, we are of the opinion that there is no error in the decree of the Chancellor, for several reasons, (1) as a matter of law, the Lumber Company cannot enforce its lien, in this suit, because it filed its bill against the owner Simpson without making the contractors parties to the suit. A furnisher's lien may be enforced by attachment, but the contractor and the owner must both be made parties to the suit. See Warner v. Yates, 10 Cates, 554, 102 S. W. 92; Christie v. Williamson, 4 Hig., 161. A contractor is entitled

to a personal judgment (Dollman v. Collier, 8 Pick., 660, 22 S. W. 741) but a subcontractor, or furnisher, is not entitled to a personal judgment against the owner, as there is no privity of contract between them. He must enforce his lien by suing both the contractor, so as to fix the amount of his debt, and the owner, by attaching the property for the enforcement of his lien. See Warner v. Yates, supra; Christie v. Williamson, supra; Taylor v. Lumber Co., 23 Pick., 41-5, 63 S. W., 1130; Lumber Co. v. Loeb, 2 Cates, 260, 75 S. W., 1043.

It may be insisted that these causes were consolidated and all parties, including the contractors, were before the court, and that a consent decree was rendered in favor of the Lumber Company against the contractors, from which they did not appeal, and thereby the furnishers' debt was established; but upon an examination of the record, it will be seen that the situation cannot help the Lumber Company. The contractors were not made defendants to the Lumber Company's bill. There is no order of record consolidating the cases, hence, at most, they were merely tried together for convenience. The decree should show the consolidation and the hearing of the causes together (Ogburn v. Dunlap, 9 Lea, 162); but had the causes been properly consolidated, that would not help the Lumber Company, as consolidation does not change the rules of pleading, nor the rights of the parties. These rights still depend upon the pleadings, proof and proceedings in the respective causes, the same as if no consolidation had been had. See Ogburn v. Dunlap, supra; Mowry v. Davenport, 6 Lea, 80; Lofland v. Coward, 12 Heisk., 547; Tharpe v. Dunlap, 4 Heisk., 674; Estill v. Deckerd, 4 Bax., 515; Masson v. Anderson, 3 Bax., 298.

The decree in favor of the Lumber Company against the contractors, as above set out, was not within the scope of the pleadings and was coram non judice, unless it was a consent decree. Consent decrees are valid although not confined to the matters presented in the pleadings (Johnston v. Osment, 108 Tenn., 32, 65 S. W., 23), but if it appears that the court rendered the decree on the evidence and from the record, then it is not a consent decree (See Boyce v. Stanton, 15 Lea, 346, 392). The decree states, "But it appearing that the said complainant is entitled to a confessed judgment against defendants Harris, Adams & Harris for the sum of $1200.63," etc. There is nothing appearing of record to show that the Lumber Company was entitled to a decree against the contractors, as they had not been sued by the Lumber Company, and there is nothing in the decree to show that it was a consent decree, hence, the decree, in so far as defendant Simpson was concerned, was coram non judice, as neither he nor the contractors consented to it.

(2)  We think the record shows that the required notice was not given to the owner within the required time.

The statute, Shannon's Code, sec. 3540, provides:

"Every journeyman or other person employed by such mechanic, founder, or machinist, to work on the buildings, fixtures, machinery or other improvements, or to furnish material for the same, shall have this lien for his work, or material; provided, that, within thirty days after the building is completed, or the contract of such laborer, mechanic, or workman shall expire, or he be discharged, he or they shall notify in writing, the owner of the property on which the building or improvement is being made, or his agent or attorney, if he reside out of the county, that said lien is claimed, and said lien shall continue for the space of 90 days from the date of said notice in favor of such sub-contractor, mechanic, or laborer."

It is contended that the contractors obtained a little material from the Lumber Company about January 15, 1922, and did "a little touching up" on the building at that time, and that notice was served on February 3, 1922, which was within thirty days. The notice, itself, stated that the materials were furnished between August 1st and December 1, 1921, and it was for those materials notice was given upon which the lien was claimed. The last of these materials was furnished and delivered on October 19, 1921, and we think that this last transaction on January 15, 1922, was merely an attempt to revive the lien. The Lumber Company's man could not remember what he furnished, other than some little stuff, while the contractor said he obtained some osycle for a door, and a little molding, and that he did a little touching up, which was denied by Simpson. Be this as it may, it was a trifling, insignificant matter. A lien cannot be revived or effected by the doing of an insignificant act not originally contemplated, where it is so insignificant as to form no part of the original conception, such as the making good of trifling defects. See 40 C. J., page 202, sec. 239; page 391, note 81; Knoxville Lumber & Mfg. Co. v. Galyon & Son, 8 Hig., 608; Dunn v. McKee, 5 Sneed, 657; Arrington v. Grissom, 1 Cold., 521. Hence, we are of the opinion that this attempt was ineffectual to revive the lien.

However, it is insisted that the notice was given within thirty days after the building was completed; but we think that the building was not completed on January 15, 1922, and in fact, the contractors never did complete the building; hence, the notice given before completion is premature, and is not effectual to perfect the lien. See Bird Bros. v. Southern Surety Co., 139 Tenn., 11, 200 S. W., 978. Hence, this assignment of error must be overruled.

The second and fifth errors assigned are that the Chancellor erred in holding that the contract had been breached by the contractors, and in confirming the master's report allowing Simpson $2,000 damages. We think these assignments are not well made. The proof shows that the roof and the floors sag, because not properly constructed, and because the joists were of green lumber, as a result of which the roof leaks and the plastering is broken. The walls were improperly constructed and placed on old foundations which settled, causing the walls to crack in many places. The tile in the walls were not properly jointed with mortar and as a result of which the walls leak. The windows were made of single strength glass. One coat of paint on the inside, contracted for, was left off, and many other minor defects were pointed out in the proof, all of which show that the contract was breached to Simpson's damage of at least $2,000; hence these assignments of error must be overruled.

The third assignment is that the Chancellor erred in holding that the measure of damage was the difference between the value of the building constructed in accordance with the plans and specifications, and the one actually erected. We think the Chancellor was not in error in this.

Where the contractor abandons a building contract, he must compensate the owner for the damage sustained, which is the difference between the agreed price and the cost of performance (Brady v. Oliver, 125 Tenn., 595, 147 S. W., 1135; Opinion of the Court of Civil Appeals in the case of Brownsville Wholesale Grocery Co. v. J. A. Moore, Haywood County Equity, filed at Jackson, January term, 1925. Petition for certiorari was denied by the Supreme Court on July 18, 1925). But the measure of damage is different where the contractor furnishes the materials and constructs the building in a defective manner, and not in accordance with the contract. The measure of damages occasioned by failure strictly to perform a building contract is, in the case of substantial performance, the difference between the value of the work done or building erected, and the value of that which was contracted for (9 C. J., 810, sec. 149). In other words, where a building is defectively constructed in violation of the contract, in fixing the damages, the owner is entitled to the advantage of his contract price, and the measure of damages for a breach of contract is the difference between the contract price, and the value of the work done, or the cost of replacing the work so as to make it equal to the work contracted for. See Gibson v. Carlin, 13 Lea, 440; Parker v. Steed, 1 Lea, 206; Bush v. Jones, 2 Cooper's Tenn. Chy., 190; 2 Shan. Cas., 225; Elliott v. Wilkinson, 8 Yerg., 416; 2 Webb-Meigs

Tenn. Dig., 901-903, 1375. And we think the proof fully sustains the amount of damages allowed, hence this assignment must be overruled.

The fourth assignment is that the Chancellor erred in denying the contractors a recovery of $800 for extra work, instead of $209.50. In other words, it is insisted that the Chancellor should have allowed the contractors $600 more for the extra work, time and materials, caused by a relocation of the windows, and the changes made in the doors, stairway and vestibule. We have carefully examined the record on these points and we think that the Chancellor allowed ample pay for the extra work and materials. The contractors told Simpson that there would be no extra expense in making these changes, and that they could put the windows at one place as well as at another, and the contractors were unable to give any detailed account of the extra cost. We do not think there was any extra expense on account of these changes; hence, this assignment of error must be overruled.

It results that all the assignments of error must be overruled, and the decree of the Chancellor affirmed. A decree will be entered here in favor of J. W. Simpson and against Harris, Adams & Harris, and the sureties on their appeal bond, for $505.93, and interest thereon from September 29, 1924, and also the cost of the cause, including the cost of appeal in the case of Harris, Adams & Harris v. J. W. Simpson, for all of which execution may issue.

. A decree will also be entered here against the East Lake Lumber & Box Company, and the sureties on its appeal bond in favor of J. W. Simpson for the cost of the cause, including the cost of the appeal in the case of East Lake Lumber & Box Company v. J. W. Simpson, for which execution may issue.

Faw, P. J., and DeWitt, J., concur.